## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA BERRYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  CIV-10-428-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Joshua Berryman requests judicial review of a denial of benefits by

the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).

The claimant appeals the Commissioner's decision and asserts that the Administrative

Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the

undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be

REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such

---

[1]  On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J.
Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 17, 1980, and was thirty-one years old at the time of the second administrative hearing. He earned an associate's degree and has past relevant work as a mechanic's helper, roofer, gas station attendant, and order filler (Tr. 25). The claimant alleges that he has been unable to work since February 8, 2008, because of a shattered right ankle (Tr. 231) .

## Procedural History

The claimant initially applied on October 22, 2008 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Kirkpatrick determined that the claimant was not disabled in a written opinion dated May 11, 2010 (Tr. 40-51). That decision was remanded by the Honorable Ronald A. White of the Eastern District of Oklahoma upon motion by the Commissioner. In the meantime, claimant filed a second application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 3, 2010. Following remand, the applications were consolidated. ALJ Kirkpatrick again determined that the claimant was not disabled in a written opinion dated November 9, 2011. The Appeals Council denied

review, so the ALJ's November 9, 2011 written opinion represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant has the ability to perform sedentary work, *i. e.*, that claimant could lift and carry up to 10 pounds occasionally, sit for up to six hours and stand or walk for up to two hours with normal breaks, but that claimant is limited to simple, unskilled tasks which do not require public interaction (Tr. 18). The ALJ concluded that although claimant is unable to perform his past relevant work, there is work in the national economy that claimant is capable of performing, *i. e.*, assembler, machine feeder, and buckle wire inserter (Tr. 26).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze the opinions of claimant's treating physician Dr. Derek L. West, state examining physician Dr. John A. Saidi, M.D., and mental health counselor Linda Estes. Claimant also argues that the ALJ erred by failing to explain his step three analysis regarding Listing 1.06. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the medical evidence of record.

The claimant suffered a comminuted fracture of his ankle on February 8, 2008 in a motor vehicle accident. At that time, Dr. Derek West performed a surgical fixation of the right ankle and the claimant spent three days in the hospital (Tr. 385). On February 19, 2008, Dr. West signed a "Return to Work/School Status" form on which he wrote that

claimant would suffer from a permanent disability (Tr. 396). The claimant thereafter continued seeing Dr. West for follow-up visits regarding his ankle. On April 14, 2008, Dr. West's treatment plan included continuing the claimant in a walking boot and ordered that he continue to be non-weightbearing (Tr. 432). On November 25, 2008, Dr. West noted that the claimant might have reinjured his ankle, as evidence by pain at the anterior aspect of the ankle extending down to the dorsum of the right foot, and x-rays revealed that there continued to be a lack of complete healing of the distal tibia (Tr. 488).

In a letter dated September 25, 2009, Dr. West wrote that the claimant had suffered a severely comminuted pilon fracture of the right ankle, followed by persistent problems with pain, swelling, and limping (Tr. 559). Dr. West wrote that "any type of work activity that requires prolonged standing or walking or any excessive demand on the right ankle will be difficult for him" (Tr. 559).

In November 2009, Dr. West noted that claimant's x-rays showed areas of lucency and a "terrible posttraumatic osteoarthritis about his ankle joint" (Tr. 557). One month later, Dr. West wrote that claimant had developed a nonunion of the fracture and would require surgery to resolve the issue (Tr. 555-56). Dr. West also noted that ambulation was "quite painful" for him and he would require the continued use of the walking boot (Tr. 555). On August 2, 2010, the claimant underwent irrigation and debridement of his right tibia with bone grafting, but Dr. West noted that claimant would still need a fusion in the future (Tr. 543).

State reviewing physician Dr. Thurma Fiegel, M.D. completed a Physical Residual Functional Capacity Assessment on May 27, 2008 (Tr. 454-461). Dr. Fiegel found that

claimant could occasionally lift up to 50 pounds, frequently lift up to 25 pounds, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday (Tr. 455). Dr. Fiegel's findings were mirrored in a Physical Residual Functional Capacity Assessment completed by state reviewing physician Dr. Kenneth Wainner on January 13, 2009 (Tr. 476-83). But in April 2009, state reviewing physician Dr. J. Marks-Snelling, D.O., M.P.H. reduced the claimant's ability to lift/carry to 20 pounds occasionally and 10 pounds frequently (Tr. 497). Finally, Dr. Wainner completed another Physical Residual Functional Capacity Assessment on February 7, 2011 and reduced claimant's ability to stand/walk from six hours to two hours in an eight hour workday (Tr. 580). Further, Dr. Wainner opined that claimant could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and crouch (Tr. 581).

State examining physician Dr. John Saidi, M.D. performed an examination on claimant and recorded that claimant cannot walk without a cane because he cannot bring weight on his right foot and ankle (Tr. 652). Further, Dr. Saidi wrote that while claimant's gait was slow but safe and stable without the cane, the claimant could not keep his weight on his right foot or perform toe or heel walking (Tr. 652). Dr. Saidi also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) and found that claimant could sit for six hours in an eight-hour workday, stand for one hour in an eight-hour workday, and walk for thirty minutes in an eight-hour workday (Tr. 655). Dr. Saidi found that claimant could frequently reach, handle finger and feel and occasionally push/pull, occasionally operate foot controls with his right foot and frequently operate foot controls with his left foot, occasionally climb stairs and

ramps, balance, stoop, kneel, crouch, and crawl and never climb ladders or scaffolds, and occasionally tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations (Tr. 656-58).

The claimant argues that the ALJ failed to properly analyze the opinions of Dr. Derek West and Dr. John Saidi. The undersigned agrees. First, medical opinions from the claimant's treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

With respect to Dr. West's opinion, the ALJ discounted it by stating that it "seems Dr. West simply parroted back the claimant's subjective allegations" and citing to notes in the record that indicate that claimant's ankle fracture was improving (Tr. 21-22). First, the ALJ may not reject a treating physician opinion based on a speculation that the physician simply parroted back a claimant's allegations. *See*, *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotation omitted] [emphasis in original]. In addition, in citing to notations in the medical evidence that indicate claimant's ankle fracture was improving, the ALJ ignores that the claimant suffered setbacks in the healing of his ankle fracture, that Dr. West continually noted that claimant would need a fusion due to non-union of the fracture, *and* that claimant had a decreased range of motion in his ankle joint (Tr. 543). The ALJ is not permitted to "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*,

362 F.3d 676, 681 (10th Cir. 2004), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Further, Dr. West's findings *are* supported in the record by the findings of state examining physician Dr. John Saidi (Tr. 652-58).

The ALJ similarly failed to properly analyze the examining physician opinion of Dr. John Saidi. The ALJ discredited Dr. Saidi's findings because the "report states it is 'not based on any significant findings', and is simply reporting claimant's allegations, which are not supported by the medical evidence of record." (Tr. 22). Dr. Saidi's report, however, says no such thing. It is clear from the record that Dr. Saidi actually *examined* the claimant to arrive at his conclusions regarding the claimant's functional capacity (Tr. 652-58). Dr. Saidi *did* note that there were "no any other significant findings at this time" in response to an item on the questionnaire which prompted the physician to identify particular medical or clinical findings supporting his conclusions, but it seems clear that Dr. Saidi was stating that there were no *other* findings *besides* his physical examination of the claimant (Tr. 656). Further, the ALJ is not permitted to discredit a medical opinion based on his own speculative conclusion that the physician has simply adopted the claimant's allegations as true. *See, Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports

indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

For the reasons set forth above, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the opinions of Dr. Derek West and Dr. John Saidi. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma